UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LISA E. WILCOX,

    Plaintiff,

v.                                            Case No. 8:14-cv-1681-T-24 TGW

GREEN TREE SERVICING, LLC,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 22). Plaintiff opposes the motion. (Doc. No. 30). As explained below, the motion is granted in part and denied in part.

**I. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

**II. Background**

This case involves Plaintiff Lisa Wilcox's allegations that Defendant Green Tree Servicing, LLC violated the Telephone Consumer Protection Act ("TCPA") and the Florida Consumer Collection Practices Act ("FCCPA") regarding the collection of Plaintiff's mortgage loan debt. The complaint, which frames the claims and theories in this case, is poorly drafted when compared to the evidence before the Court and Plaintiff's current theories of liability set forth in her summary judgment response. However, the Court can only consider the claims and theories of liability that Plaintiff actually pled in her complaint. See Coon v. Georgia Pacific Corp., 829 F.2d 1563, 1569 (11th Cir. 1987)(refusing to consider specific acts of discrimination that were not set forth in the complaint); Wu v. Thomas, 996 F.2d 271, 275 (11th Cir. 1993)(refusing to allow evidence at trial that would support a theory of retaliation that was not set forth in the complaint); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1313 (11th Cir. 2004)(concluding that a plaintiff cannot raise a new claim for the first time in response to a summary judgment motion); Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286, 1297 (11th Cir. 2006)(refusing to consider the plaintiff's FMLA claim based on his mother's health condition when the plaintiff only alleged his own health condition as the basis for his FMLA claim); Thews v. Wal-Mart Stores, Inc., 560 Fed. Appx. 828, 830 (11th Cir. 2014)(refusing to consider a theory of negligence that was not alleged in the complaint). As such, the Court will describe the allegations in the complaint in order to determine the claims at issue.

**A. Allegations in the Complaint**

Plaintiff alleges the following in her complaint (Doc. No. 1): Plaintiff had a mortgage on

her home that was owned by Fannie Mae or Freddie Mac. Defendant was the loan servicer for the mortgage loan, and at all relevant times, Defendant was attempting to collect on Plaintiff's mortgage loan debt. In attempting to collect on the debt, Defendant called Plaintiff's cell phone[1], using an automated telephone dialing system ("ATDS") and leaving pre-recorded messages, without her permission on or about the following thirteen dates:

- May 22, 2012
- May 28, 2012
- May 31, 2012
- June 5, 2012
- June 8, 2012
- June 15, 2012
- June 25, 2012
- November 9, 2012
- May 7, 2013
- August 2, 2013
- October 31, 2013
- November 1, 2013
- November 5, 2013

Additionally, on October 29, 2012, Defendant instituted a foreclosure action in state court against Plaintiff. On November 16, 2012, Plaintiff's attorney filed a notice of appearance in that case, which put Defendant on notice that Plaintiff was represented by counsel. Despite this knowledge, Defendant called Plaintiff's cell phone after November 16, 2012 on the dates described above.

In Count I, Plaintiff asserts an FCCPA claim and specifically quotes from Florida Statute § 559.72(18). Section 559.72(18) provides, in relevant part, that a debt collector cannot communicate with the debtor if the debt collector knows that the debtor is represented by an attorney with respect to such debt, unless the debtor initiates the communication. The only

---

[1] Plaintiff's cell phone number ends in 0064.

communications with Plaintiff described in the complaint are Defendant's calls to Plaintiff's cell phone.

In Count II, Plaintiff asserts a TCPA claim based on Defendant's use of an ATDS and/or use of a pre-recorded voice to leave messages on Plaintiff's cell phone.

### B. Additional Facts and Theories Raised in Plaintiff's Response Brief

Based on the above, there are two specific claims before the Court: (1) Plaintiff's claim that Defendant violated § 559.72(18) of the FCCPA by calling her cell phone on five specific dates after November 16, 2012, when her attorney filed his notice of appearance in the foreclosure case; and (2) Plaintiff's claim that Defendant violated the TCPA by calling her cell phone on thirteen specific dates using an ATDS and/or using a pre-recorded voice to leave messages.

In her summary judgment response, Plaintiff relies on the following additional facts and theories to support her FCCPA claim that are not included in her complaint. Specifically, Plaintiff changes the theory stated in her complaint that the FCCPA claim is based only on the five identified calls to her cell phone after November of 2012; instead, she now contends that her FCCPA claim is also based on: (1) letters that Defendant sent directly to Plaintiff after November 16, 2012; (2) other calls to her cell phone that are not identified in her complaint; and (3) phone calls that Defendant made to third parties (both family and non-family) in an attempt to collect the debt.[2]

---

[2]In paragraph 14 of the complaint, Plaintiff does allege that Defendant called third-party Alan Wilcox and discussed Plaintiff's debt with him on two occasions. The FCCPA prohibits a debt collector from disclosing "to a person other than the debtor or her or his family information affecting the debtor's reputation." Fla. Stat. § 559.72(5). However, Plaintiff does not cite to § 559.72(5) in her FCCPA claim, nor does she allege that the information discussed with Alan

4

Additionally, with regard to her TCPA claim, it appears that Plaintiff is attempting to rely on other calls that Defendant made (and messages left) on dates other than those listed in the complaint.

Defendant argues that new facts and theories cannot be asserted for the first time in response to a summary judgment motion. Plaintiff completely fails to address this argument or provide a basis for the Court to consider these new facts and theories. Upon consideration, the Court concludes that these new facts and theories are material changes to the amended complaint for which Plaintiff should have sought leave to amend her complaint. Plaintiff did not seek leave to amend, and the Court can only consider the claims and theories of liability that Plaintiff actually pled in her complaint. As such, the Court will not consider these additional facts and theories.

## III.  Motion for Summary Judgment

As previously stated, there are two specific claims before the Court: (1) Plaintiff's claim that Defendant violated § 559.72(18) of the FCCPA by calling her cell phone after November 16, 2012, when her attorney filed his notice of appearance in the foreclosure case; and (2) Plaintiff's claim that Defendant violated the TCPA by calling her cell phone using an ATDS and/or using a pre-recorded voice to leave messages. Defendant moves for summary judgment as to both claims. Accordingly, the Court will set forth the evidence in the light most favorable to Plaintiff as to the claims before the Court, and then the Court will analyze Defendant's arguments with respect to those claims.

---

Wilcox affected her reputation. Finally, Alan Wilcox is Plaintiff's father, and thus, would be a member of Plaintiff's family. (Doc. No. 23, p. 24).

**A.  FCCPA Claim - Count I**

Plaintiff claims that Defendant violated § 559.72(18) of the FCCPA by calling her cell phone after November 16, 2012, when her attorney, John Redding, filed his notice of appearance in the foreclosure case.  As a result, the calls at issue, as alleged in the complaint, are the five calls allegedly made on May 7, 2013, August 2, 2013, October 31, 2013, November 1, 2013, and November 5, 2013.  However, Defendant points out that the evidence before the Court shows that Defendant did not make any of the calls to Plaintiff's cell phone on those five dates.  (Doc. No. 22-6, p. 19; Doc. No. 30-1, p. 13-19).

Furthermore, Defendant points out that this evidence is consistent with Plaintiff's deposition testimony.  Specifically, Plaintiff stated: "[T]he calls pretty much stopped from [Defendant] when John Redding became my attorney on the foreclosure[.] . . . They pretty much stopped after 2012, November."  (Doc. No. 23, p. 76-77).  Additionally, when Defendant asked Plaintiff whether she was suing Defendant under the FCCPA for the calls made after November of 2012, Plaintiff responded "No." [3]  (Doc. No. 23-, p. 77).

Plaintiff is an attorney, and while she is not representing herself in this case, she will be held to her statements that she made during her deposition.[4]  Plaintiff clearly indicated that she

---

[3] Instead, during her deposition, Plaintiff asserted new FCCPA liability theories—that Defendant spoke to third parties about her debt and that Defendant sent letters directly to her after November 16, 2012.  As previously stated, these theories were not alleged in the complaint and will not be considered.

[4] Plaintiff is not an unsophisticated person who may not understand how her statements affect her legal claims; she is an attorney who pursues debt collection claims for others.  When asked in her deposition why she believed that she had a claim against Defendant, she stated that she had been working on consumer protection cases over the summer and realized what her clients had been dealing with.  (Doc. No. 23, p. 71-72).  She further stated that if she was going to encourage her clients to come forward as victims of debt collectors calling their cell phones,

was no longer pursuing the phone calls made after November of 2012 as part of her FCCPA claim, and as such, she has abandoned her FCCPA claim as pled in her complaint.

Accordingly, based on the allegations in the complaint and the evidence before the Court, Defendant is entitled to summary judgment on Plaintiff's FCCPA claim. Accordingly, the Court grants Defendant's motion on this issue.

### B. TCPA Claim - Count II

Next, Plaintiff claims that Defendant violated the TCPA by calling her cell phone using an ATDS and/or using a pre-recorded voice to leave messages. In order to establish a TCPA claim under 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff must show that Defendant: (1) made a call using an ATDS or using a prerecorded voice; (2) the call was not made for emergency purposes; (3) the call was made without Plaintiff's prior express consent; and (4) the call was made to a telephone number assigned to Plaintiff's cellular telephone service. See Walker v. Transworld Systems, Inc., 2015 WL 631390, at *2 (M.D. Fla. Feb. 13, 2015); Lee v. Gulf Coast Collection Bureau, Inc., 2014 WL 6978760, at *2 (M.D. Fla. Dec. 10, 2014).

Defendant argues that it did not use an ATDS or a pre-recorded voice to leave messages. Plaintiff disputes Defendant's arguments. Accordingly, the Court will analyze both theories of TCPA liability for the calls at issue (as alleged in the complaint).

#### 1. Calls Made Using an ATDS

Plaintiff claims that Defendant violated the TCPA by calling her cell phone using an ATDS and/or using a pre-recorded voice on the thirteen dates identified in the complaint. Defendant argues that the evidence shows that it did not call her cell phone on seven of those

---

then she needed to take a stand as well. (Doc. No. 23, p. 71-72).

thirteen dates: May 28, 2012, June 15, 2012, May 7, 2013, August 2, 2013, October 31, 2013, November 1, 2013, and November 5, 2013. (Doc. No. 22-6, p. 19; Doc. No. 30-1, p. 13-19, 33; Doc. No. 22-2, p. 23). Upon review, the Court agrees with Defendant that the evidence shows that Defendant did not call Plaintiff's cell phone on those seven dates, and as such, summary judgment on her TCPA claim with respect to those seven alleged calls is warranted.

Thus, Plaintiff's TCPA claim based on the use of an ATDS is limited to the six calls that Defendant did make to Plaintiff's cell phone on the following six dates: May 22, 2012, May 31, 2012, June 5, 2012, June 8, 2012, June 25, 2012, and November 9, 2012. In order to determine whether these calls were made using an ATDS, the Court looks to the definition of an ATDS.

The TCPA defines an ATDS as equipment which has the capacity to both: (1) store or produce telephone numbers to be called, using a random or sequential number generator, and (2) dial such numbers. 47 U.S.C. § 227(a)(1). The FCC[5] has expanded the definition of an ATDS to include predictive dialers, which utilize lists of phone numbers that the equipment dials without human intervention and then assists in predicting when an agent is available to take the call.[6] See In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 WL 21517853, at *46 (F.C.C. July 3, 2003)("2003 FCC Ruling"). The FCC expanded the definition because the basic function of ATDS equipment is "the *capacity* to dial

---

[5]The FCC has the authority to make rules and regulations necessary to carry out the TCPA. See Mais v. Gulf Coast Collection Bureau, Inc., 2014 WL 4802457, at *5 (11th Cir. Sept. 29, 2014).

[6]When the TCPA was passed, telemarketers used dialing equipment to create and dial arbitrary 10-digit numbers. See 2003 FCC Ruling at 14092. However, around the turn of the century, it became more cost effective to use lists of numbers. See id. As a result, the FCC expanded the definition of an ATDS, because the defining feature of an ATDS was the capacity to dial numbers without human intervention.

8

numbers without human intervention." See id.

Defendant argues that the evidence shows that its agents manually dialed Plaintiff's cell phone for all of the calls at issue. In support of this contention, Defendant points to the affidavit of its Assistant Vice President of Technical Support and Operations, Robert Tolley. (Doc. No. 22-6). Tolley has reviewed the calls made to Plaintiff's cell phone and can determine, based on the their "Call Type," how each call was made. (Doc. No. 22-6).

According to Tolley, there are three ways that Defendant can make a call. The first way is for Defendant's agent to manually dial the 10-digit phone number on the handset. (Doc. No. 22-6, p. 8, ¶ 5). Calls made using this manual method are listed as "Local" in the "Call Type" column of the call report Tolley submitted to the Court. (Doc. No. 22-6, p. 9, ¶ 9; Doc. No. 22-6, p. 19).

The second way that Defendant's agents make calls is to use the Genesys CTI system. (Doc. No. 22-6, p. 8, ¶5). Tolley describes this call method as follows:

> The second [way] is to use the Genesys CTI system to select a number to be called from a list. If the agent uses the second method, the Genesys server instructs the PBX [telephone] system . . . to place the telephone call. Upon connection, the call is delivered to the agent at the agent identification number specified for that phone. . . . [I]t is common for there to be a short delay between connection to [the called party's] telephone number and the delivery of the call to the agent.

(Doc. No. 22-6, p. 8, ¶5). Calls made using the Genesys CTI system are listed as "National" in the "Call Type" column of the call report Tolley submitted to the Court. (Doc. No. 22-6, p. 9, ¶ 9; Doc. No. 22-6, p. 19).

The third way that Defendant's agents make calls is to use an ATDS, which is operated through the Aspect Dialer system. (Doc. No. 22-6, p. 8). Calls made using the ATDS will show

up on the call report with a specific Trunk Access Code for the Tempe, Arizona or St. Paul, Minnesota dialer systems. (Doc. No. 22-6, p. 9, ¶ 8). Tolley explains that none of the calls at issue were made from the Aspect Dialer System, because the call report does not list one of the dialer system Trunk Access Codes for any of the calls. (Doc. No. 22-6, p. 9, ¶ 8; Doc. No. 22-6, p. 19, 21).

Based on a review of Tolley's affidavit and the call report, the evidence shows that five of the calls at issue were made manually, because the "Call Type" is listed as "Local." These five calls were made on May 22, 2012, May 31, 2012, June 5, 2012, June 8, 2012, and June 25, 2012. Because the evidence shows that these five calls were made by the agent manually dialing Plaintiff's cell phone number, Plaintiff's TCPA claim based on the use of an ATDS for these calls fails and summary judgment is warranted.

Based on a review of Tolley's affidavit and the call report, the evidence shows that the other call at issue, the one made on November 9, 2012, was made using the Genesys CTI system, because the "Call Type" is listed as "National." Plaintiff argues that the Genesys CTI system is an ATDS; specifically, a predictive dialer. Therefore, Plaintiff contends that this call violates the TCPA.

As previously stated, the key feature of an ATDS is the capacity to dial numbers without human intervention. See Holcombe v. Credit Protection Association, LP, 44 F. Supp.3d 1311, 1315 (M.D. Ga. 2014); Lardner v. Diversified Consultants Inc., 17 F. Supp.3d 1215, 1223 (S.D. Fla. 2014)(stating that the equipment at issue was an ATDS "because it automatically dials telephone numbers from a preprogrammed list"); Buslepp v. Improv Miami, Inc., 2012 WL 4932692, at *2 (S.D. Fla. Oct. 16, 2012); Hicks v. Client Services, Inc., 2009 WL 2365637, at *5

(S.D. Fla. June 9, 2009); Legg v. Voice Media Group, Inc., 20 F. Supp.3d 1370, 1374 (S.D. Fla. 2014). The evidence before the Court is somewhat vague regarding how the phone calls are initiated under Defendant's second calling method using the Genesys system; it is unclear whether the agent selects the number to be called (and then the Genesys system responds by dialing the number that the agent selects) or if the Genesys systems selects the number to be called. If the agent selects the number to be called, then the call would be made as a result of human intervention, and the call would not be made using an ATDS. See Gragg v. Orange Cab Co., Inc., 995 F. Supp.2d 1189,1194 (W.D. Wash. 2014)(concluding that the system at issue required human intervention in order to send the text message, because a human physically pressing "accept" was required before the message could be sent[7]). However, because the evidence on this issue is unclear, the Court denies summary judgment on Plaintiff's claim that Defendant violated the TCPA by calling her cell phone using an ATDS on November 9, 2012.

## 2.  Pre-Recorded or Artificial Voice

Plaintiff also claims that Defendant violated the TCPA by leaving messages on her cell phone using a pre-recorded or artificial voice on the thirteen dates alleged in the complaint. As previously stated, the Court has found that the evidence shows that Defendant did not call Plaintiff's cell phone on seven of those dates: May 28, 2012, June 15, 2012, May 7, 2013, August 2, 2013, October 31, 2013, November 1, 2013, and November 5, 2013. (Doc. No. 22-6, p. 19; Doc. No. 30-1, p. 13-19, 33; Doc. No. 22-2, p. 23). Despite this evidence, Plaintiff contends that Defendant called her cell phone on August 2, 2013 and November 5, 2013, and she submits the Google transcripts of the messages that were left. (Doc. No. 22-1, p. 61-62).

---

[7]"A text message is a 'call' under the TCPA." Gragg, 995 F. Supp.2d at 1192 n.4.

11

However, the August 12, 2013 message for which Plaintiff has provided a Google transcript states that the message is from Fannie Mae. (Doc. No. 22-1, p. 61). There is no evidence before the Court that this call was made by Defendant or that Defendant authorized Fannie Mae to call Plaintiff on Defendant's behalf. (Doc. No. 22-6, p. 19; Doc. No. 22-2, p. 5, ¶ n). Accordingly, the Court concludes that this message cannot support Plaintiff's TCPA claim.[8]

Likewise, the November 5, 2013 message for which Plaintiff has provided a Google transcript states that the message is from Fannie Mae regarding Defendant's servicing of Plaintiff's loan. (Doc. No. 22-1, p. 62). Again, there is no evidence before the Court that this call was made by Defendant or that Defendant authorized Fannie Mae to call Plaintiff on Defendant's behalf. (Doc. No. 22-6, p. 19; Doc. No. 22-2, p. 5, ¶ n). Accordingly, the Court concludes that this message cannot support Plaintiff's TCPA claim.

Thus, the only calls at issue are the calls that Defendant made to Plaintiff's cell phone on the following six dates: May 22, 2012, May 31, 2012, June 5, 2012, June 8, 2012, June 25, 2012, and November 9, 2012. Defendants call logs show that Defendant left messages on all six of these dates. (Doc. No. 22-2, p. 31-42).

Defendant moves for summary judgment on the TCPA claim based on pre-recorded messages, arguing that the transcripts of the messages show that each message was somewhat different, and therefore, "it is far more likely that a person left a live message." (Doc. No. 22, p.

---

[8]The Court acknowledges that "a creditor on whose behalf a[] . . . prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 2008 WL 65485, at *3 (F.C.C. Jan. 4, 2008). However, Defendant has submitted the affidavit of its Regional Manager, Myron Preble, stating that Defendant did not retain any third parties to call Plaintiff. (Doc. No. 22-2, p. 5, ¶ n). As such, there is no evidence that Fannie Mae called Plaintiff on behalf of Defendant.

12; Doc. No. 22-1, p. 57-62). Defendant does not provide any affidavits from its agents stating that they left live messages.

Plaintiff responds that Defendant did, in fact, leave pre-recorded messages on her cell phone. (Doc. No. 31-1, p.4, ¶ 16). Plaintiff also stated that on a few occasions, a recorded message would be left with what sounded like a computer generated voice. (Doc. No. 22-7, p. 2).

Thus, there is a factual dispute regarding whether Defendant left pre-recorded messages on Plaintiff's cell phone, and the dispute cannot be resolved on a motion for summary judgment. Accordingly, the Court denies Defendant's motion as to Plaintiff's claim that Defendant violated the TCPA by calling her cell phone and leaving a pre-recorded message on the following six dates: May 22, 2012, May 31, 2012, June 5, 2012, June 8, 2012, June 25, 2012, and November 9, 2012.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (Doc. No. 22) is **GRANTED IN PART AND DENIED IN PART**: The motion is **DENIED** to the extent that: (1) Plaintiff contends that Defendant violated the TCPA by calling her cell phone using a pre-recorded or artificial voice on the following six dates: May 22, 2012, May 31, 2012, June 5, 2012, June 8, 2012, June 25, 2012, and November 9, 2012; and (2) Plaintiff contends that Defendant violated the TCPA by calling her cell phone using an ATDS on November 9, 2012. Otherwise, the motion is **GRANTED** as to Plaintiff's TCPA claim and as to Plaintiff's FCCPA claim in its entirety.

**DONE AND ORDERED** at Tampa, Florida, this 5th day of May, 2015.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record